Patrick R. RIZZO, Plaintiff-Appellant,

v.

J. DAWSON, Correctional Counselor; L. Williams, Correctional Counselor; J. Stocker, Vocational Instructor; and T. Howell, Correctional Counselor, et al., Defendants-Appellees.

No. 84-1602.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1985.

Decided Dec. 12, 1985.

sitting by designation.

Patrick R. Rizzo, pro se.

John K. Van de Kamp, Atty. Gen., Thomas A. Brady, Kenneth C. Young, Dep. Attys. Gen., San Francisco, Cal., for defendants-appellees.

Before MERRILL, TANG, and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

The district court dismissed the plaintiff's in forma pauperis civil rights action by a summary order before process issued. We reverse and remand.

The plaintiff's claims of fourth amendment and equal protection violations were properly dismissed as frivolous because they lacked substance in law and fact. The plaintiff's due process claims were similarly correctly dismissed because no cognizable liberty or property interest was alleged.[1] However, the plaintiff's claim of retaliation was sufficient to state a claim and dismissal of that claim at this stage of the proceedings was therefore improper.

## FACTS

Patrick Rizzo, a state prisoner, filed a civil rights complaint and, at the same time, requested a temporary restraining order. Plaintiff's complaint alleged wrongful reassignment out of a prison vocational course without a hearing to contest the reassignment. He claimed that a subsequent transfer to a different state prison was made easier because of the reassignment and that the transfer subjected him to inferior conditions and other hardships. Plaintiff also claimed that his transfer out of San Quentin was in retaliation for his work as a "jailhouse lawyer" assisting other inmates with habeas petitions and other federal actions. Plaintiff's final claim, that gave rise to his request for a temporary restraining order, was that transfer would endanger his health because he required a hand operation that could be performed only at San Quentin.

The district court initially withheld service of process and then, on March 4, 1983, issued an Order to Show Cause referring only to those portions of the complaint asking for injunctive relief. The court concluded that none of the alleged prospective injuries threatened immediate, irreparable, harm that would warrant the issuance of a temporary restraining order. The district court accordingly issued an order denying the plaintiff's request for a temporary restraining order and, granting plaintiff leave to proceed in forma pauperis.

However, the court expressed concern that the plaintiff might suffer irreparable harm if not operated on before his impending transfer. The court required the defendants to file a return showing cause why a preliminary injunction should not issue enjoining them to insure proper medical treatment and directed the clerk to furnish the defendants with a copy of the complaint and order to assist them in meeting this requirement.

The Attorney General filed a return and supplemental return assuring that the plaintiff's medical needs were being taken care of. Based on that assurance, the district court entered a terse order and judgment denying plaintiff's application for a temporary restraining order and dismissing the action with prejudice. The order contains no reasons for the court's decision and the plaintiff was not given an opportunity to amend.

## DISCUSSION

### A. *Applicable Legal Standard*

We assume that process did not issue since no summons and complaint were served on defendants pursuant to Fed.R. Civ.P. 4(a). Accordingly, we review the district court's dismissal of plaintiff's in forma pauperis action before process issued to determine whether the action was properly dismissed as frivolous under 28 U.S.C. § 1915(d). *Franklin v. Murphy,* 745 F.2d 1221 (9th Cir.1984) (*Franklin II*).

In *Franklin II* we affirmed the dismissal as frivolous of an in forma pauperis complaint because it had no arguable substance in law or fact. *Id.* at 1227. We pointed out that, "[t]he legal component of the 1915(d) frivolity standard is thus similar to the test for dismissal of pro se complaints for failure to state a claim." *Id.* at 1228. The Supreme Court test cited in *Franklin II* allows dismissal of a pro se complaint for failure to state a claim only where "it

**1.** Plaintiff's eighth amendment claim is not pressed on appeal.

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *see Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).[2] We review the district court's apparent determination that the plaintiff's complaint lacked arguable substance in law or fact de novo as a question of law.

The plaintiff's uncontroverted allegations are entitled to the usual presumption of truth, and, to the extent the complaint is deficient, "pro se plaintiffs proceeding in forma pauperis must also be given an opportunity to amend their complaints unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Franklin II* at 1228 n. 9, citing *Stanger v. City of Santa Cruz,* 653 F.2d 1257, 1257–58 (9th Cir.1980); *Broughton v. Cutter Laboratories,* 622 F.2d 458, 460 (9th Cir.1980).

B. *Application of Legal Standard to Plaintiff's Claims*

 Most of the claims plaintiff raises in his complaint are frivolous. Plaintiff's assertion that his transfer would violate his fourth amendment rights and equal protection rights has no basis in law. Plaintiff's claim of cruel and unusual punishment in violation of the eighth amendment that was the basis of his preliminary injunction request is no longer in issue. The district court found that the plaintiff's medical needs were being taken care of and denied the preliminary injunction. The plaintiff has not appealed this or raised a cruel and unusual punishment claim in any way on appeal. The plaintiff has therefore waived this claim.

Plaintiff also asserts, both in his original complaint and on appeal, a due process right not to be deprived of a prison vocational course and not to be transferred without an appropriate hearing. Apparent-

ly, plaintiff is claiming that defendant Stocker, by filling out a negative evaluation of the plaintiff without giving the plaintiff the full benefit of the 30–day evaluation period or a chance to contest the evaluation, forced plaintiff's withdrawal from a vocational course which, in turn, made it easier for the authorities to transfer him to another prison.

 The fourteenth amendment prohibits the deprivation of liberty or property without due process of law. A due process claim is cognizable only if there is a recognized liberty or property interest at stake. *Board of Regents of California v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

 Plaintiff alleged no liberty or property interest sufficient to trigger due process protection in his original complaint. If the plaintiff's claimed liberty or property interest was a right to remain at San Quentin, his claim clearly fails. In *Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 2538–39, 49 L.Ed.2d 451 (1976), the Supreme Court held that

"Neither does the due process clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the institutions is within the normal limits or range of custody which the conviction has authorized the state to impose."

An inmate's liberty interests are sufficiently extinguished by his conviction so that the state may change his place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another. *Id.; see also Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813 (1982). Unless there is some guarantee that transfer will not be effected except for misbehavior or some other specified reason, due process protections cannot apply. *Olim,* 461 U.S.

---

**2.** *Franklin II* suggests there is no substantive difference between the frivolous standard and the pro se standard for dismissal for failure to state a claim. Therefore, even had process is-

sued in this case and the district court dismissed for failure to state a claim, our review would be the same—whether the plaintiff's claim lacked arguable substance in law or fact.

at 249, 103 S.Ct. at 1747. In this case there is no allegation that the authorities could not transfer the plaintiff at will or that any of their regulations or procedures created any substantive restriction on their decision to transfer. Therefore no liberty or property interest has been, or could be, alleged and the due process claim must fail. If the plaintiff's due process claim hinges on a property interest in the vocational instruction course, his claim similarly lacks substance in law and fact because there is no constitutional right to rehabilitation. *Hoptowit v. Ray,* 682 F.2d 1237, 1254–55 (9th Cir.1982).[3] Therefore, no protected interest has been alleged and no due process claim can stand.

Plaintiff's retaliation claim has more promise. Plaintiff asserts that his reassignment and subsequent transfer were done in retaliation for his activities both in pursuing his own legal actions and in assisting other prisoners in pursuing legal remedies. Determining whether plaintiff's claim can survive dismissal involves two related inquiries: first, whether retaliatory action for assisting with or bringing litigation can ever state a claim under the first amendment, and second whether the plaintiff's status as a prisoner and defendants' status as prison authorities prevent the plaintiff from challenging the defendants' alleged action.

To state a claim Rizzo must allege both that the type of activity he engaged in was protected under the first amendment and that the state impermissibly infringed on his right to engage in the protected activity. Although we face for the first time the issue of whether retaliation for assisting with litigation and bringing litigation states a claim under the Constitution, we find the reasoning of the Tenth Circuit in *Owens v. Rush,* 654 F.2d 1370 (10th Cir.1981), persuasive. In *Owens* the court noted that assisting in litigation to vindicate civil rights, attending meetings about necessary legal steps and associating for the purpose of assisting persons seeking legal redress were protected by the first amendment. The court relied on the reasoning in *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), which held that civil rights litigation could be a form of political speech and therefore that assisting in such litigation was protected by the first amendment. The *Owens* court also looked to Supreme Court decisions decided after *Button* that recognized first amendment protection of any collective action, regardless of its political nature, taken to obtain meaningful access to the courts. *See, e.g., United Transportation Union v. Michigan Bar,* 401 U.S. 576, 585, 91 S.Ct. 1076, 1082, 28 L.Ed.2d 339 (1971). The *Owens* court held that where a government employee was dismissed for assisting his wife with her Title VII sex discrimination suit, his activity was protected by the first amendment and retaliation for engaging in that protected activity would be a violation of his rights. The fact that Owens did not have his own liberty or property interest at stake in the litigation, as would be required for a due process claim, did not preclude his claim for violation of his first amendment rights. *See Perry v. Sindermann,* 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972).

In this case the plaintiff stated that he was assisting other inmates with their habeas petitions, that he encouraged and offered to help his fellow students in the vocational course in legal matters, and that he was pursuing legal actions of his own. These allegations adequately state that plaintiff was participating in activities similar to those in *Button* and *Owens,* which thus are protected by the first amendment.

The plaintiff's statements that his first amendment rights were infringed because he was reassigned from his vocational course and consequently transferred from

---

3. While it appears that plaintiff alleged no explicit liberty or property interest, procedural requirements in and of themselves, could create a protected interest if the procedures are intended to be a significant substantive restriction on decision-making. *Goodisman v. Lytle,* 724 F.2d 818, 820 (9th Cir.1984). However, defendant Stocker's 30–day evaluation is not a substantive restriction on the prison authorities' discretion to transfer or reassign the plaintiff and, therefore, cannot be the basis for a due process claim.

the prison in retaliation for his engaging in this protected activity adequately allege retaliation. The retaliatory infringement aspect of the plaintiff's claim, however, is more complicated than that presented to the *Owens* court. As in *Owens* the type of retaliatory conduct complained of in this case would normally run afoul of the first amendment because of the danger of "smothering all discussion looking to the eventual institution of litigation ..." *NAACP v. Button*, 371 U.S. at 434, 83 S.Ct. at 338. However, unlike the plaintiff in *Owens*, the plaintiff in this case is a prisoner and unlike an ordinary citizen, his associational rights may be permissibly restricted by prison authorities because of the institutional need to maintain order. It is therefore necessary to evaluate Rizzo's rights and the prison authorities alleged actions in light of Rizzo's prisoner status.

■ In *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974), the Court stated

> "A prison inmate retains those first amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."

However, the associational rights of prisoners "may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations ... possess the likelihood of disruption of prison order or stability ..." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977). Challenges to restrictions of first amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional institution in the preservation

of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners. *See Procunier v. Martinez*, 416 U.S. 396, 412, 94 S.Ct. 1800, 1810, 40 L.Ed.2d 224 (1974); *Storseth v. Spellman*, 654 F.2d 1349 (9th Cir.1981). However, the limitation must be no greater than is necessary to protect the particular governmental interest involved. *Procunier v. Martinez, supra*, 416 U.S., at 413, 94 S.Ct. at 1811.

■ For Rizzo to state a cause of action, therefore, he must do more than allege retaliation because of the exercise of his first amendment rights in bringing and assisting in civil rights litigation; he must also allege that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals. *See Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir.1984). In this case the plaintiff has alleged that Stocker's actions were retaliatory and were arbitrary and capricious. He has thereby sufficiently alleged that the retaliatory acts were not a reasonable exercise of prison authority and that they did not serve any legitimate correctional goal.[4] Accordingly, we hold that plaintiff has stated a cause of action notwithstanding the limitation on his associational rights because of his status as a prisoner. Summary dismissal was improper as to this claim. We therefore remand to the district court for further proceedings on the retaliation claim.

REVERSED and REMANDED.

---

**4.** This is not to say, however, that bare allegations of arbitrary retaliation are enough by themselves, to avoid dismissal. Dismissal may have been warranted if there was no factual support for the allegations or the factual support was contradicted by facts that the court could notice or that were apparent in the record. Rizzo's complaint does not fall into this category. Rizzo alleges that Stocker recommended his reassignment on the basis of too many library passes. The fact that Rizzo was absent too often and that this led to his poor

evaluation is apparent from Stocker's evaluation in the record. Yet, even were Rizzo's complaint deemed factually deficient, the court should have, but did not, allow Rizzo the opportunity to amend. At present, it is not clear that there was, in fact, retaliatory motive, that the prison officials acted arbitrarily or that the complaint could survive summary judgment. However, in light of our finding that the alleged retaliation states a cause of action, the complaint, though inartfully drafted, should survive summary dismissal.