967 F.2d 591
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Scott C. SMITH, Plaintiff-Appellant,
v.
Rick QUEEN, et al., Defendant-Appellee.
 No. 91-36012.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 26, 1992.*
Decided June 2, 1992.
 
 Before FARRIS, DAVID R. THOMPSON and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Scott C. Smith, a Washington state prisoner, appeals pro se the district court's summary judgment in favor of the defendants, prison officials, in his civil rights action under 42 U.S.C. § 1983. Smith contends that the district court erred by finding that there was no genuine issue of material fact as to Smith's claim that he was harassed and denied his constitutional rights in retaliation for his legal activities. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in part.
 
 
 3
 We review the district court's grant of summary judgment de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990). We must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the substantive law. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 4
 "The right of access to the courts is subsumed under the first amendment right to petition the government for redress of grievances. Deliberate retaliation by state actors against an individual's exercise of this right is actionable under section 1983." Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.1989). If a prison inmate challenges a perceived restriction on his right to pursue legal activities, we must analyze the challenge "in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985) (citing Procunier v. Martinez, 416 U.S. 396, 412 (1974)). Thus, prison officials are not liable for their alleged retaliatory actions if such actions advance the legitimate goals of the correctional institution and are narrowly tailored to achieve these goals. See id.
 
 
 5
 Here, Smith claims that the defendants harassed him in retaliation for his legal activities by (1) conducting excessive body and cell searches; (2) temporarily freezing the funds in his prison account; (3) tampering with his legal mail; (4) taking disciplinary actions against Smith; (5) ignoring Smith's need for medical care, and (6) labeling him a "snitch" with the intent of having him physically injured by inmates.
 
 A. "Snitch" Claim
 
 6
 Allegations that prison officials labeled an inmate a "snitch" may support a cause of action under section 1983 for violation of the inmate's right to be protected from violence while in custody and for interference with his or her access to the courts. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir.1989).
 
 
 7
 In his complaint, Smith alleged that various prison guards called him a "snitch" in retaliation for his role in legal actions against the prison. Smith supported his allegation with affidavits from other inmates who claimed that these guards had called Smith a "snitch" in the prison cafeteria. The defendants filed affidavits denying any wrongdoing.
 
 
 8
 Viewing the evidence in the light most favorable to Smith, we conclude that he has established the existence of a genuine issue of material fact as to whether defendants called Smith a "snitch" in the presence of other inmates. See Valandingham, 866 F.2d at 1139. Our case law does not require Smith to show that he was actually threatened or physically injured by inmates on account of being labeled a "snitch." See id. Therefore, the district court erred by granting summary judgment on Smith's retaliation claim. See id.
 
 B. Partial Freeze of Smith's Prison Account
 
 9
 Prison inmates have a protected property interest in the funds in their prison accounts. Quick v. Jones, 754 F.2d 1521, 1523 (9th Cir.1984). Therefore, prison officials must respect an inmate's due process rights if they take action affecting the inmate's prison account. See id. at 1524 (predeprivation processes satisfy due process).
 
 
 10
 Here, prison officials partially froze Smith's prison account without providing any advance notice to Smith.[1] Smith learned of the freeze after unsuccessfully attempting to send funds to Kathy Littell and the law firm of Kayne & Kitching. The defendants stated that the partial freeze was necessary to prevent Smith from funneling money away from the prison institution. They asserted that (1) Smith attempted to send money to Littell, a suspected repository and distributor of money; (2) Smith had a history of incurring prison debts for his legal and non-legal activities, and (3) a potential lawsuit existed against Smith. In addition, the defendants asserted that Smith's account was partially frozen pending an informal opinion from the Attorney General regarding the definition of indigent and the validity of the freeze.
 
 
 11
 The partial freeze may have deprived Smith of his property interest in his prison account. See Quick, 754 F.2d at 1523. The defendants presented no evidence showing that Littell was a repository; her affidavit flatly denied this characterization. There was no evidence that Smith had an outstanding debt with the prison, and there was no evidence that any lawsuit against Smith was ever filed or prosecuted. Absent supporting evidence, the defendants' reasons for their action were purely speculative and did not serve a legitimate penological interest. Therefore, the defendants were not entitled to summary judgment. See Quick, 754 F.2d at 1524. For similar reasons, the defendants were not entitled to summary judgment on Smith's mail tampering claim.
 
 
 12
 C. Excessive Searches and Disciplinary Actions
 
 
 13
 The defendants conceded that Smith was subjected to frequent searches and that disciplinary actions were taken against him. Nevertheless, the defendants introduced evidence to show that their actions were in the interest of maintaining discipline and furthering the legitimate goals and policies of the prison. See Rizzo, 778 F.2d at 532.[2] Smith did not present evidence to rebut these assertions, and therefore, the district court properly granted summary judgment on these claims. See Oltarzewski v. Ruggiero, 830 F.2d 136, 138 (9th Cir.1987).
 
 D. Medical Treatment
 
 14
 As for Smith's claim that the defendants denied him medical treatment, the record indicates that he injured his neck on September 27, 1987 and was examined by a physician the next day. In October, 1987, Smith asserted that two medical appointments to see physicians were cancelled for no reason.[3] He received additional medical treatment in November 1987. The defendants asserted that they did not interfere with Smith's medical treatment. Aside from his conclusory statements, Smith failed to present facts establishing that the defendants intentionally interfered with his medical treatment. See Wood v. Housewright, 900 F.2d 1332, 1334-35 (9th Cir.1990). Each party shall bear its own costs.
 
 
 15
 AFFIRMED IN PART and REVERSED IN PART.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Defendant Lawrence Kincheloe, the prison superintendent, ordered the freeze on Smith's account, which prohibited Smith from sending any money out of the prison and allowed him to buy goods from the prison store
 
 
 [2]
 The defendants submitted Smith's prison "face sheet" that established that he had a history of violent behavior and had possessed contraband on numerous occasions, thereby warranting frequent body and cell searches. The disciplinary actions against Smith were supported by documents recording Smith's infractions and affidavits by the prison officials stating that their actions were not retaliatory
 
 
 [3]
 Smith apparently was in segregation for various infractions, including refusing to submit to a body search. Smith claimed that he could not comply with the search because his injury prevented him from lifting his left arm. Nevertheless, prison guards refuted Smith's claim, asserting that they had observed Smith lifting and using his left arm. Smith was punished with 10 days in isolation and 20 days segregation. See CR 58 (Exhibit 59)