988 F.2d 127
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Paul A. WRIGHT, Plaintiff-Appellant,
v.
Veronica REBEIRO, et al., Defendants-Appellees.
 No. 91-36087.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 4, 1993.*
Decided Feb. 26, 1993.
As Amended on Denial of Rehearing April 13, 1993.
 
 Appeal from the United States District Court for the Western District of Washington, No. CV-90-396-R; Barbara J. Rothstein, District Judge, Presiding.
 W.D.Wash.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before TANG, KOZINSKI and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Washington state prisoner Paul Wright appeals the district court's grant of summary judgment on his § 1983 claim. Wright claims on appeal that he was placed in administrative segregation and transferred to another prison in retaliation for the exercise of his rights of access to the courts and free speech, and in violation of his due process and equal protection rights.
 
 BACKGROUND FACTS
 
 3
 Wright participated in a class action suit to prevent the Washington State Reformatory (WSR) from double-bunking prisoners. A consent decree was reached in which the state agreed to single-bunk only, and it was implemented in approximately 1986. In 1988, WSR began to renovate the prison, and planned to double-bunk the inmates during the renovation. On March 20, 1989, Wright spoke out at an approved inmate club meeting against double-bunking and in favor of enforcing the consent decree by court order. He apparently persuaded numerous inmates to join him in the enforcement of the consent decree. The next day, the prison officials put Wright in administrative segregation, and on March 30, 1989, Wright was transferred to the Washington State Penitentiary at Walla Walla (WSP).
 
 DISCUSSION
 I. Wright's retaliation claim
 
 4
 We review the district court's grant of summary judgment de novo. Perez v. Curcio, 841 F.2d 255, 257 (9th Cir.1988). Summary judgment is only appropriate if there is no genuine issue of material fact and the district court correctly applied the substantive law. Id. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Allen v. Scribner, 812 F.2d 426, 430 (9th Cir.) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2513 (1986)), amended on other grounds, 828 F.2d 1445 (9th Cir.1987). The judge's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue of material fact for trial. Allen, 812 F.2d at 430.
 
 
 5
 To survive a motion for summary judgment on a retaliation claim, a prisoner must do more than simply allege retaliation due to his exercise of constitutional rights. He must also allege that the prison's retaliatory action did not advance a legitimate penological goal, or was not narrowly tailored to achieve that goal. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985).
 
 
 6
 Wright introduced circumstantial evidence of the defendants' retaliatory motive. He presented an affidavit from prisoner Robert Stratton which states that on the morning of March 21, defendant Evans summoned Stratton and another prisoner to Evans' office where he questioned the prisoners about Wright's role in the meeting the previous day. Evans told these prisoners that he held Wright responsible for swaying the inmates' vote on the double-bunking issue. [CR 118, Ex. 30]. Wright also contends that another advocate of enforcing the consent decree, Steve Plant, was transferred to another institution at the same time, and that prisoner Albert Owens was placed in segregation on March 21 for possessing a leaflet advocating enforcement of the consent decree. These contentions are supported by affidavits. [CR 118, Ex. 24 (affidavit of Robert McKinney); Ex. 27 (affidavit of Edward Mead); Ex. 20 (affidavit of James Chaney Bey) ]. Furthermore, the close proximity between Wright's protected activity and defendants' action may lead to an inference of retaliatory motive. See Smith v. Maschner, 899 F.2d 940, 949 (10th Cir.1990) ("Smith has supported his allegations of retaliation by the only means available to him--circumstantial evidence ...); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir.1979) (chronology of events provides support for inference of retaliation).
 
 
 7
 Wright also established that there was a genuine issue of material fact whether or not the prison officials' actions were for a legitimate penological goal, because Wright introduced evidence sufficient for the trier of fact to conclude that the penological goals articulated by the prison officials were a pretext for retaliation. Prison officials may not defeat a retaliation claim on summary judgment simply by articulating a justification for the retaliatory action, when there is a genuine issue of material fact whether the action was taken purely in retaliation for the exercise of a constitutional right.[1]
 
 
 8
 The district court thus erred in granting the motion for summary judgment.
 
 
 9
 The district court also erroneously limited Wright's discovery regarding his retaliation claim. Wright sought to discover various documents related to the prison officials' articulated reasons for Wright's segregation and transfer. The magistrate judge ruled that these issues were irrelevant to the issue of retaliatory motive and denied further discovery. The district judge held that regardless of whether plaintiff's requests were relevant, "it appears that plaintiff had most of this information already in his possession" through documents attached to the motion for summary judgment and those provided directly to plaintiff at the time of his transfer.
 
 
 10
 Documents regarding the prison officials' articulated reasons for Wright's placement in administrative segregation and transfer to another prison are relevant to Wright's retaliation claim. The district court's holding that Wright has "most" of the requested documents indicates that he does not have all requested documents. Wright should be allowed complete discovery of any information not privileged, or to which defendants have a valid objection, related to the articulated reasons for Wright's segregation and transfer.
 
 II. Wright's due process claims
 
 11
 Wright's due process rights were not violated by his transfer to another prison. Prisoners do not have a constitutionally protected right to be housed in a particular prison. Rizzo, 778 F.2d at 530.
 
 
 12
 Wright's due process rights were also not violated by his placement in administrative segregation. Prisoners do not have a due process right to remain in the general prison population, absent a state-created liberty interest. Hewitt v. Helms, 459 U.S. 460, 468-72 (1983); Toussaint v. McCarthy, 801 F.2d 1080, 1089 (9th Cir.1986). Even if Wright correctly contends that a prison policy provided that prisoners would not be placed in administrative segregation unless they posed a threat to prison security,[2] Wright recieved what process was due after being confined to administrative segregation. Hewitt, 460 U.S. at 477. Wright concedes that the prison officials followed the appropriate procedures for his placement in segregation.
 
 
 13
 Wright's due process claims were properly dismissed.
 
 III. Wright's prior restraint claim
 
 14
 Wright bases this claim on one of the proffered reasons for placing him in administrative segregation: Wright's efforts to publish the "Red Dragon" newsletter, which allegedly advocated armed overthrow of the United States.
 
 
 15
 "A prison inmate retains those first amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. However, the associational rights of prisoners 'may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations ... possess the likelihood of disruption of prison order or stability ...' " Rizzo, 778 F.2d at 532 (quotations and citations omitted). Wright has not established that if indeed this was the reason he was placed in administrative segregation, it was not within the prison officials' informed discretion to reasonably conclude that the publication and circulation of the Red Dragon within the prison possessed the likelihood of disruption of prison order or stability.
 
 IV. Wright's equal protection claim
 
 16
 Wright claims his right to equal protection was violated because his collaborator in publishing the Red Dragon, Edward Mead, was not placed in administrative segregation as was Wright. Because Wright provides no factual support for this contention, and has not alleged discrimination based on a suspect class, he fails to state an equal protection claim.
 
 
 17
 V. Dismissal of defendants Riveland, Lehman, & Rebeiro
 
 
 18
 Wright contends the district court erred in dismissing prison defendants Chase Riveland, Secretary of the Department of Corrections, Joseph Lehman, Assistant Secretary of the Department of Corrections, and Larry Kincheloe, Director of the Division of Prisons. Wright does not contest the dismissal of Ms. Rebeiro.
 
 
 19
 Wright does not allege that these individuals personally participated in the decision to place Wright in administrative segregation or to transfer him to WSP. These defendants may not be held liable solely on the basis of supervisory responsibility. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989) ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."). Although Wright contends that his attorney wrote letters to these defendants questioning the propriety of Wright's transfer, Wright did not introduce evidence that these defendants had actual knowledge of any retaliatory nature of the transfer.
 
 
 20
 Wright's claim that these defendants failed to adequately train personnel also fails because Wright offers no evidence that training policies or personnel regulations were not implemented or that the training was inadequate.
 
 
 21
 Defendants Riveland, Lehman, Kincheloe and Rebeiro were thus properly dismissed.
 
 
 22
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS REGARDING WRIGHT'S RETALIATION CLAIM AGAINST DEFENDANTS ANDERSON, EVANS, AND DUCHARME.
 
 
 
 *
 The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 At least two other circuits have taken this approach in the summary adjudication of prisoner retaliation claims. In Madewell v. Roberts, 909 F.2d 1203, 1206 (8th Cir.1990), the court held that summary judgment on a retaliation claim was inappropriate where there were conflicting affidavits regarding the reasons for the defendants' actions. Similarly, in Smith v. Maschner, 899 F.2d 940, 948-49 (10th Cir.1990), the court held that a jury could reasonably find retaliation where there was conflicting evidence, including affidavits, introduced at summary judgment
 
 
 [2]
 Wright has not designated the prison policy as part of the record on appeal for this court to review