56 F.3d 72
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Russell E. NEWMAN, Plaintiff-Appellant,
v.
James H. GOMEZ, Director, Department of Corrections; et al.,
Defendants-Appellees.
 No. 94-16437.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 14, 1995.*
Decided May 22, 1995.
 
 Before: TANG, SCHROEDER, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 California state prisoner Russell E. Newman appeals pro se the district court's dismissal pursuant to 28 U.S.C. Sec. 1915(d) of his 42 U.S.C. Sec. 1983 civil rights action. Newman alleges that while incarcerated at Pelican Bay State Prison the defendants, several California prison officials, violated his constitutional rights. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm in part, and vacate and remand in part.
 
 
 3
 We review for abuse of discretion a district court's dismissal of an action as frivolous under 28 U.S.C. Sec. 1915(d). Denton v. Hernandez, 112 S. Ct. 1728, 1734 (1992). In forma pauperis complaints that are frivolous may be dismissed before service of process under 28 U.S.C. Sec. 1915(d). Neitzke v. Williams, 490 U.S. 319, 324 (1989).
 
 
 4
 Newman alleged that on December 12, 1992, he transferred into Pelican Bay from the California Correctional Institution in Tehachapi. In Tehachapi, Newman was housed in the general population. Upon his arrival at Pelican Bay, Newman was assigned to custody level "Close B." On December 21, 1992, Newman appeared before the Institutional Classification Committee ("ICC"), chaired by defendants P. Dillard and C. Galbraith and was reclassified to "Close A" pursuant to a prison policy, Operations Manual Addendum ("OMA") Section 62010. Newman alleged that defendants Charles D. Marshall and James Gomez issued OMA Section 62010 without authorization. Newman further alleged that his behavior did not warrant reclassification and argues that the defendants placed him in "Close A" custody in retaliation for naming defendants Dillard and Marshall in a 1990 civil rights lawsuit. Newman sought declaratory and injunctive relief and monetary damages.
 
 
 5
 On September 3, 1993, the district court denied Newman's request to proceed in forma pauperis on the following claims: (1) custody reclassification; (2) denial of vocational and educational programs; and (3) service of cold meals. Finding these claims legally frivolous, the district court dismissed the claims without prejudice. With respect to the remaining claims--(1) retaliatory housing assignment and lack of evidence to support housing assignment; and (2) denial of exercise--the district court found that Newman had failed to link the affirmative conduct of each defendant to the alleged constitutional violations. Thus, the district court dismissed these claims with leave to amend.
 
 
 6
 On October 4, 1993, Newman submitted an amended complaint. In his amended complaint, Newman alleged that defendants Dillard and Galbraith, as members of the ICC, reclassified Newman to custody level "Close A" in retaliation for Newman's 1990 lawsuit and denied him due process. Newman further alleged that the defendants Marshall and Gomez failed to properly enact OMA Section 62010. Newman also alleged, for the first time, that Pelican Bay officials: (1) took his incoming legal mail; (2) refused to process his outgoing legal mail; (3) refused to allow medical visits; (4) denied access to the prison law library; and (5) stripped Newman naked and locked him in an outdoor cage for an hour and a half, where the temperature was 43 degrees. Newman sought declaratory and injunctive relief and monetary damages.
 
 
 7
 On July 15, 1994, the district court concluded that Newman failed to cure the deficiencies of his original complaint and dismissed Newman's action without leave to amend in an unpaid action. Newman timely appeals.
 
 Analysis
 A. Custody Classification
 
 8
 Newman contends that the district court erred by determining that even if he did have a state-created liberty interest in a proper classification, the defendants provided constitutionally adequate procedural due process.
 
 
 9
 California has created a liberty interest in freedom from administrative segregation. See Toussaint v. McCarthy, 801 F.2d 1080, 1097-98 (9th Cir. 1986), cert. denied, 481 U.S. 1069 (1987). An inmate may be segregated from the general prison population when prison officials reasonably believe he threatens the security of the prison. See id. at 1100-01. Prison administrators need only provide the inmate with an informal adversarial hearing within a reasonable time, advise the inmate of the reason for segregation and allow the inmate to present his views. Id. Due process does not require prison authorities to hold a hearing before the inmate is actually segregated or to disclose the identity of persons providing the information relied on. Id. Some evidence in the record is enough to support the prison official's decision to segregate an inmate. Id. at 1104.
 
 
 10
 In his original complaint, Newman alleged that he appeared before the ICC on December 21, 1992, and that the ICC reclassified his custody level to "Close A" pursuant to prison policy. These allegations establish that the defendants provided Newman with an informal hearing on December 21, 1992, and an opportunity to challenge the reclassification. See id. at 1100-01. Moreover, we note that the ICC hearing took place prior to the defendants placing Newman in "Close A" custody. Thus, we conclude that these allegations fail to state an arguable claim that the defendants denied Newman due process. See id.
 
 
 11
 Newman also alleged that no evidence supported the defendants' decision to place him in "Close A" custody. However, in his original complaint, Newman alleged that the defendants reclassified him because he was considered an administrative problem under policy directives. In Toussaint, we acknowledged that "[w]hen deciding whether administrative segregation is needed ... the administrator relies largely on subjective factors." Id. at 1100. Thus, we conclude that the defendants determination that Newman was an administrative problem was sufficient to instigate the reclassification process. See id.
 
 B. Retaliation
 
 12
 Newman contends the district court erred by determining that he did not adequately allege the defendants took any affirmative retaliatory action against him.
 
 
 13
 Prisoners have a fundamental right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977). A prisoner's pursuit of legal actions is protected by the First Amendment. Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985). In order to prove that prison officials have unconstitutionally retaliated against a prisoner for exercising his First Amendment rights, a prisoner must show not only that his actions were protected by the First Amendment, but also that the prison officials' allegedly retaliatory acts did not advance a legitimate penological goal, or were not narrowly tailored to achieve that goal. Id. at 532.
 
 
 14
 Here, Newman alleged that defendants Dillard and Galbraith, while serving on the ICC, reclassified Newman's custody from level "Close B" to "Close A" in retaliation for having named defendants Dillard and Marshall in a 1990 civil rights lawsuit. He alleged only that the defendants were "aware" of the lawsuit and that the reclassification was without evidentiary support. The district court instructed Newman to amend his complaint to link the conduct of the defendants to some retaliatory motive or to some act from which a retaliatory motive could be inferred. Newman failed to amend his complaint. A plaintiff must do more than allege retaliation because of the exercise of constitutional rights. He must also "allege that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532.
 
 
 15
 Like the district court, we conclude that Newman's mere allegation that the defendants knew of his 1990 civil rights action does not necessarily imply that they took any retaliatory action. See id. at 532. Moreover, we note that Newman alleged that the defendants' decision to reclassify him was based on the fact that he was an administration problem. Such a decision is a legitimate correctional goal. See Toussaint, 801 F.2d at 1101. Because the district court gave Newman a chance to amend his complaint and because Newman failed to properly allege a retaliation claim, we conclude that the district court did not abuse its discretion in dismissing this claim. See Rizzo, 778 F.2d at 532 & n.4.
 
 
 16
 C. Improper Enactment of Prison Regulations
 
 
 17
 Newman contends that the district court erred by determining that his challenge to the enactment of OMA Section 62010 was not cognizable in a 42 U.S.C. Sec. 1983 action. Newman argues that the defendants did not enact OMA Section 62010 pursuant to the Administrative Procedure Act of the California Government Code ("APA"), California Government Code Sec. 11347.5. The district court properly held that he alleged no violation of federal law.
 
 D. Eighth Amendment Violations
 
 18
 The district court dismissed Newman's Eighth Amendment claims because they were similar to issues in a pending class action litigation, Madrid v. Gomez, No. C90-3094-TEH, 1995 WL 17092 * 1 (N.D. Cal. Jan. 10, 1995). Newman contends that the district court erred by dismissing his claims.
 
 
 19
 A district court may dismiss an individual's claims which duplicate allegations and requests for relief in pending class action in which plaintiff is a class member. Crawford v. Bell, 599 F.2d 890, 892-93 (9th Cir. 1979). However, a district court should not dismiss an individual's claims if the allegations or request for relief go beyond the pending class action. Id. at 893.
 
 
 20
 In Madrid, the district court defined the class as: "all prisoners who are, or will be, incarcerated by the State of California Department of Corrections at Pelican Bay State Prison." Madrid v. Gomez, No. C90-3094-TEH, 1995 WL 17092 * 1 (N.D. Cal. Jan. 10, 1995) (findings of fact, conclusions of law, and order). The plaintiffs alleged that prison officials: (1) condone a pattern and practice of using excessive force against inmates; (2) fail to provide inmates with adequate medical care; (3) fail to provide inmates with adequate mental health care; (4) impose inhumane conditions in the Secured Housing Unit, (5) utilize cell-assignment procedures that expose inmates to an unreasonable risk of assault from other inmates; (6) fail to provide adequate procedural safeguards when segregating prison gang affiliates in the Secured Housing Unit, and (7) fail to provide inmates with adequate access to the courts. See id. The class seeks injunctive and declaratory relief. See id.
 
 
 21
 We have reviewed Newman's original and amended complaints and conclude that Newman's allegations are within the scope of the issues presented in Madrid. We see no legal significance in the fact that Newman was not housed in the Secured Housing Unit ("the SHU"). Thus, we conclude that the district court properly dismissed Newman's claims for declaratory and injunctive relief. See Crawford, 599 F.2d at 892-93. Newman, however, also seeks monetary damages, which are beyond the scope of the Madrid action. Thus, the district court should consider Newman's claims insofar as he requests monetary damages. See id. at 893. Moreover, because Newman's allegation that he was stripped naked and placed in an outdoor cage is closely related to his other Eighth Amendment claims, we instruct the district court to allow Newman to proceed with this claim in this action. Therefore, on remand, the district court shall allow Newman to proceed with his Eighth Amendment claims insofar as he seeks monetary damages.
 
 E. Seizure of Legal Papers
 
 22
 In his amended complaint, Newman alleged that the defendants confiscated his incoming legal mail. The district court did not address this claim. The confiscation of legal mail may harm a prisoner's access to the courts. See Sands v. Lewis, 886 F.2d 1166, 1168 (9th Cir. 1989), Vigliotto v. Terry, 873 F.2d 1201, 1202 (9th Cir. 1989). Thus, the district court should address this claim on remand.
 
 
 23
 The Eighth Amendment claims for damages and the claims for confiscation of mail are remanded. The decision of the district court is affirmed in all other respects.
 
 
 24
 AFFIRMED IN PART AND VACATED AND REMANDED IN PART.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a); 9th Cir. R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3