IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 36657

| WILLIAM LIGHTNER, | ) | 2010 Unpublished Opinion No. 675 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: October 15, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| M. TIDWELL, JOHN HARDISON, PAUL | ) | THIS IS AN UNPUBLISHED |
| BAROSSO, DIANE BUANE, BRIAN | ) | OPINION AND SHALL NOT |
| McCORMACK, | ) | BE CITED AS AUTHORITY |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge.

Order summarily dismissing prisoner civil rights complaint, <u>affirmed</u>.

William Lightner, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Krista L. Howard, Deputy Attorney General, Boise, for respondents M. Tidwell, John Hardison, Paul Barosso, Diane Buane; Naylor & Hales, P.C.; Eric F. Nelson, Boise, for respondent Brian McCormack.

_____

GRATTON, Judge

William Lightner appeals the dismissal of his prisoner civil rights complaint. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

William Lightner is an inmate in the custody of the Idaho Department of Correction (IDOC). On November 1, 2007, Correctional Officer Tidwell, a respondent in this action, issued a disciplinary offense report ("DOR") against Lightner. She reported that on October 12, 2007, while checking on the inmates in their cells, she "passed by Offender Lightner's cell and saw him with his legs slightly bent with one leg laying to the side, facing the cell door. He had his penis exposed out the right leg of his boxers and was looking right at me, making no effort to change it." She filed the disciplinary report because exposure of genitals, which may be

1

offensive to others, is prohibited by IDOC policy. On November 14, 2007, the hearing officer found Lightner violated IDOC policy and imposed sanctions against him.

In June 2008, Lightner was housed in minimum security and his level of custody was the subject of review. After initially reviewing Lightner's file, a case manager completed a review form recommending Lightner's classification be reduced to community custody. Lightner reviewed the completed form, signed it, and waived his right to be present at the custody hearing. The case manager forwarded the form to the acting classification supervisor, respondent Brian McCormack. McCormack corrected two errors on the form to include the November 1, 2007, disciplinary report and to include a note that Lightner committed a high-risk crime and had more than three years until he was eligible to be released. Either of these errors alone would have changed the recommended custody classification to minimum security. McCormack changed the recommendation to minimum security and sent it on to the classification committee without notifying Lightner. The committee followed McCormack's recommendation and Lightner was retained in minimum security.

In November 2008, Lightner's custody level was again reviewed. At this point his offense on October 12, 2007, was over one year old and did not count against his classification; however, based on the crime he committed and the amount of time remaining until he was eligible for release, his custody level remained at minimum security.

Lightner filed a civil complaint, identifying 42 U.S.C. § 1983 as the basis of his claim, and sought monetary damages and changes in his conditions of confinement. He alleged, among other things, that the disciplinary report was filed against him in retaliation for another lawsuit that he was pursuing; the disciplinary report violated his due process because it was false; and the changing by McCormack of the recommended classification form that he had signed prior to the June 2008, custody review violated his due process. The district court, upon motions by respondents, dismissed the complaint. Lightner appeals.

## II.

## DISCUSSION

Lightner claims that the district court erred in granting summary judgment and dismissing the complaint because: (1) the disciplinary report was filed against him in retaliation; (2) the disciplinary report was false and violated his due process; and (3) McCormack violated his due

2

process in altering the custody review form after it had been signed by Lightner. This Court will address Lightner's claims in turn.

As an appellate court, we will affirm a trial court's grant of an I.R.C.P. 12(b)(6) motion where the record demonstrates that there are no genuine issues of material fact and the case can be decided as a matter of law. *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 398, 987 P.2d 300, 310 (1999). When reviewing an order of the district court dismissing a case pursuant to Rule 12(b)(6), the nonmoving party is entitled to have all inferences from the record and pleadings viewed in its favor, and only then may the question be asked whether a claim for relief has been stated. *Coghlan*, 133 Idaho at 398, 987 P.2d at 310. The issue is not whether the plaintiff will ultimately prevail, but whether the party is entitled to offer evidence to support the claims. *Orthman v. Idaho Power Co.*, 126 Idaho 960, 962, 895 P.2d 561, 563 (1995).

When a district court considers affidavits submitted in connection with the motion to dismiss under I.R.C.P. 12(b)(6), it is converted into a motion for summary judgment. I.R.C.P. 12(b); *Glaze v. Deffenbaugh*, 144 Idaho 829, 831, 172 P.3d 1104, 1106 (2007). We first note that summary judgment under I.R.C.P. 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint School District*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994).

The party moving for summary judgment initially carries the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Eliopulos v. Knox*, 123 Idaho 400, 404, 848 P.2d 984, 988 (Ct. App. 1992). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct. App. 1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence, or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini-Mart, Inc.*, 134

3

Idaho 711, 712, 8 P.3d 1254, 1255 (Ct. App. 2000). Once such an absence of evidence has been established, the burden then shifts to the party opposing the motion to show, via further depositions, discovery responses, or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under I.R.C.P. 56(f). *Sanders*, 125 Idaho at 874, 876 P.2d at 156.

The United States Supreme Court, in interpreting Federal Rule of Civil Procedure 56(c), which is identical in all relevant aspects to I.R.C.P. 56(c), stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citations omitted). The language and reasoning of *Celotex* has been adopted in Idaho. *Dunnick*, 126 Idaho at 311-12, 882 P.2d at 478-79.

## A.    Retaliation

Lightner argues the district court erred in dismissing his claim that Officer Tidwell filed the disciplinary report in retaliation for his pursuing a lawsuit against the IDOC.[1] Access to the courts is a fundamental constitutional right. *Evensiosky v. State*, 136 Idaho 189, 191, 30 P.3d 967, 969 (2001). Pursuing and assisting in litigation to vindicate civil rights are activities protected by the First Amendment to the United States Constitution. *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985). Therefore, an inmate who was penalized because of his or her legal actions against state officials may be entitled to relief. *Drennon v. Craven*, 141 Idaho 34, 39, 105 P.3d 694, 699 (Ct. App. 2004). However, unlike an ordinary citizen, a prisoner's rights may

---

[1]    On appeal, Lightner argues that Tidwell filed the disciplinary report because she was embarrassed when earlier in the day Lightner asked Tidwell why she was watching him in the shower. There are no allegations of this event in the record before the district court, and, generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991).

be restricted by prison authorities because of the institutional need to maintain order. *Id*. Thus, to state a cause of action for retaliation because of the exercise of constitutional rights in bringing and assisting in civil rights litigation, a prisoner must also allege that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals. *Id*.

To state a claim for retaliation, a prisoner must allege that: (1) the type of activity he engaged in was protected under the First Amendment; (2) the State impermissibly infringed on his right to engage in the protected activity; and (3) the retaliatory action was not reasonably related to a legitimate penological interest. *Id*. Additionally, some courts have required an inmate alleging retaliation to show that his protected conduct was a substantial or motivating factor in the questioned decision. *See, e.g., Pryor-El v. Kelly*, 892 F. Supp. at 274 (citing *Mt. Healthy City School District Board of Education. v. Doyle*, 429 U.S. 274, 287 (1977)).

Lightner alleged in his affidavit that the "DOR was written out of retaliation and was an exaggerated response to create derogatory comments in Affiant[']s file, and using Affiant[']s offence (sic) and classification to justify her action." Lightner argues that Tidwell should not have been offended in seeing his genitals while he was in his room because female correction officers see inmates naked in the showers as they walk by and from the surveillance cameras. Officer Tidwell observed Lightner's offensive behavior on October 12, 2007, and the disciplinary report was delivered to Lightner on November 1, 2007. Lightner contends that disciplinary reports according to IDOC policy are delivered to inmates within twenty-four hours and the delay in this case demonstrates it was done in retaliation. He argues that as a sanction for the disciplinary report he could have been put in segregation, which would have stopped him from communicating with his wife and paralegal, and impaired his ability to work on his lawsuit. He also argues that the disciplinary report could have hurt his opportunity to obtain probation. The district court held that the complaint failed to plead the absence of any legitimate correctional goal for the disciplinary report and Lightner did not allege the disciplinary report chilled his exercise of any constitutional right.

Lightner's claim of retaliation relied on his argument that an adverse sanction from the disciplinary report could infringe on his ability to follow through with his lawsuit. He does not allege that the disciplinary report actually did infringe on his ability to pursue his lawsuit. The actual sanction that was imposed on Lightner for exposing himself was five days of detention,

which was suspended for five months, and a loss of the use of the ball field, gym, and commissary for thirty days. Lightner was given five months before he needed to serve his detention; he had ample opportunity to pursue his litigation. Lightner has not alleged that the respondents infringed on his right to file a lawsuit, nor that the disciplinary report would deter him from pursuing his lawsuit. Lightner has failed to demonstrate the district court erred in dismissing his retaliation claim.

**B.      Due Process**

Lightner claims that his due process was violated because: (1) the disciplinary report was false; and (2) the custody review form was altered after he signed it and before it went to the classification committee. The respondents raised numerous arguments, including: (1) Lightner did not demonstrate a liberty interest or due process violation; (2) he failed to exhaust his administrative remedies; (3) the claim is moot because he received another hearing; and (4) he waived his opportunity to be present at the hearing. Lightner failed to allege facts that could establish a liberty interest for due process purposes, and Lightner failed to exhaust his administrative remedies regarding the alteration of the custody review form. This Court need not address the other defenses.

> The Due Process Clauses of the United States and Idaho Constitutions forbid the government from depriving an individual of life, liberty, or property without due process of law. U.S. Const. amend. XIV; Idaho Const. art. I, § 13. These constitutional protections extend to prisoners, subject to the qualification that incarceration does necessitate the withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. *Martin v. Spalding*, 133 Idaho 469, 472, 988 P.2d 695, 698 (Ct. App. 1998). "The fact of confinement as well as the legitimate goals and policies of the penal institution limit these retained constitutional rights." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).
>
> To determine whether an individual's due process rights under the Fourteenth Amendment have been violated, a court must engage in a two-step analysis. *Schevers v. State*, 129 Idaho 573, 575, 930 P.2d 603, 605 (1996). It must first decide whether the individual's threatened interest is a liberty or property interest under the Fourteenth Amendment. *Id.*; *Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 722, 918 P.2d 583, 591 (1996). Only if it finds a liberty or property interest will the court reach the next step, in which it determines the extent of due process procedural protections. *Schevers*, 129 Idaho at 575, 930 P.2d at 605.

*Briggs v. Kempf*, 146 Idaho 172, 175-76 191 P.3d 250, 253-54 (Ct. App. 2008).

To determine whether an inmate has a protected liberty interest, the Idaho Supreme Court adopted the reasoning of the United States Supreme Court from *Sandin v. Conner*, 515 U.S. 472 (1995). *Schevers*, 129 Idaho at 575-77, 930 P.2d at 605-07. Shifting from a focus on regulations to a focus on hardship, the Court looked to whether the restriction imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In other words, courts look at whether the restrictions constitute a dramatic departure from the basic conditions of prison life. *Id.* at 484-85. In *Schevers*, the Court identified two factors to consider in determining whether the punishment is atypical and a significant hardship--the likelihood that it will affect the prisoner's sentence, and the duration of the segregation. In that case, Schevers was moved from a minimum security general population placement, to disciplinary segregation. He was thereafter reclassified as medium security. This sentence of disciplinary segregation resulted in the denial of certain minimum security privileges and the loss of access to personal property. Although he was placed in disciplinary segregation for fifty-five days, the Court concluded that this hardship was not a serious departure from what one would normally expect from prison life. *Schevers*, 129 Idaho at 577, 930 P.2d at 607. The Court's declaration that Schevers lacked a protected liberty interest led to the conclusion that he was not entitled to procedural due process under either the Fourteenth Amendment to the United States Constitution, or Article I, § 13 of the Idaho Constitution. *Id.* at 577-78, 930 P.2d at 607-08.

The *Schevers* Court also rejected Schevers' claim that he had a liberty interest that was violated because a disciplinary violation could prevent him from obtaining parole. *Id*. at 577, 930 P.2d at 607. The Court recognized that the decision of whether to release a prisoner on parole rests on a myriad of considerations, but rejected Schevers' argument that the chance that a disciplinary violation could impact his parole opportunities could impart a due process liberty interest.

In regard to Lightner's claim that the disciplinary report was false, he failed to show a liberty interest. As punishment for the disciplinary report Lightner was sanctioned with five days of detention, and he lost ball field, gym, and commissary privileges for thirty days. In Lightner's briefing to this Court, he acknowledges that this was not an atypical hardship, but complains that because the disciplinary report was false it was a constitutional violation. Under *Schevers*, however, without an atypical hardship there is no protected liberty interest in the due

process context for prisoners. This Court agrees that the sanction is normal for prison life and does not constitute atypical punishment or a significant hardship.

Lightner also failed to show a liberty interest in his claim that the custody review form was altered after he signed it. Lightner alleges that because the form was altered to recommend that he stay in "minimum restricted," he did not receive community custody. The *Schevers* Court recognized that there is a hardship in being reclassified from minimum security to medium security, but did not find it an atypical or significant hardship. *Schevers*, 129 Idaho at 577, 930 P.2d at 607. Lightner has failed to articulate how remaining in the same custody classification, or the correction of the document, implicated a protected liberty interest. Thus, Lightner's due process claims were appropriately dismissed.

Alternatively, the district court held that Lightner failed to exhaust his administrative remedies in claiming that the custody review form was altered. The exhaustion requirement under I.C. § 19-4206(1) demands that an inmate follow the procedural and filing requirements of a prison's administrative process for there to be a remedy in court. *Butters v. Valdez*, Docket No. 36856 (Ct. App. Sept. 30, 2010). The affidavits and submitted exhibits establish that the IDOC follows a three-step process for inmates to seek a remedy within the prison system. First, inmates are to file an informal "concern" with a member of the prison staff, who is to respond informally. Second, if the inmate is not satisfied with the resolution of the concern, the inmate can file a "grievance" with the grievance coordinator, by placing it in a lockbox. The grievance coordinator records all submitted grievances and assigns the grievance to a member of the staff for a suggested resolution. The staff's recommendation is sent to the reviewing authority to make a decision on granting, denying, or modifying the suggested remedy. A copy of the grievance with the reviewing authority's decision is then sent to the inmate. Third, an inmate's final administrative remedy is filing a "grievance appeal" by returning a copy of the grievance to the grievance coordinator, again through a lockbox. The grievance coordinator logs the appeal and forwards it to the appellate authority, generally the head of the facility.

The grievance coordinator, Jennifer Gardner, submitted an affidavit in support of the motion for summary judgment stating that there is no record that Lightner submitted a grievance concerning the alteration of his custody review form. Lightner represented to the district court that he had filed a grievance by personally handing his grievance to an IDOC officer. The district court held that Lightner had failed to exhaust his administrative remedies.

On appeal, Lightner argues that his handing his grievance to a correctional officer should satisfy the requirement of placing it in the lockbox because lockboxes are not always available to prisoners. He also contends that by giving the grievance to a correctional officer, Lightner informed prison officials of his grievance. Lightner did not put forth evidence that he could not access a lockbox or fully comply with the required administrative steps. The IDOC has devised a process of routing grievances and grievance appeals to the grievance coordinator through a lockbox. Lightner has not persuaded this Court that his failure to place his grievance in the lockbox exhausted his administrative remedies. We agree that Lightner failed to exhaust his administrative remedies regarding the alteration of the custody review form.

## C.  Attorney Fees and Costs

McCormack requests attorney fees pursuant to I.C. § 12-121 and I.A.R. 41. An award of attorney fees may be granted under I.C. § 12-121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Drennon v. Idaho State Correctional Institution*, 145 Idaho 598, 604, 181 P.3d 524, 530 (Ct. App. 2007). Whether to award attorney fees is within the discretion of this Court. *Id*. Having reviewed the record, we decline to award attorney fees.

Costs incurred in defending against this appeal are awarded as a matter of course to the respondents as the prevailing parties. *See* I.A.R. 40(a).

### III.

### CONCLUSION

The district court's dismissal of Lightner's prisoner civil rights complaint is affirmed. We decline to award McCormack attorney fees. Costs on appeal are awarded to the respondents.

Judge GUTIERREZ and Judge MELANSON, **CONCUR.**