930 P.2d 603

James A. SCHEVERS, Petitioner–
Appellant,

v.

STATE of Idaho, Larry Wright,
c/o Redifer, and Sgt. Dave
Bromley, Respondents.

No. 22684.

Supreme Court of Idaho.
Coeur d'Alene, October 1996 Term.

Dec. 17, 1996.

James A. Schevers, Boise, pro se appellant.

Alan G. Lance, Attorney General; Michaelina B. Murphy, Deputy Attorney General, Boise, for respondent.

SILAK, Justice.

Appellant James A. Schevers (Schevers) filed a petition for writ of habeas corpus, alleging that his Fourteenth Amendment due process rights were violated during a prison disciplinary proceeding, as were his due process rights under Art. I, Section 13 of the Idaho Constitution. The magistrate court dismissed the petition based on *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The district court affirmed and Schevers appeals.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Schevers is incarcerated in the South Idaho Correctional Institution (SICI). In December 1994, Correctional Officer Roy Redifer (Redifer) searched Schevers' locker and found a small bag containing a white powdery substance which was later determined to be methamphetamine. The next day, Schevers was served with a written "Disciplinary Offense Report" (DOR) in which Schevers was charged with "Individual Disruptive Behavior", pursuant to the Idaho Department of Correction Division of Prisons Directive.

Correctional Officer Stuart (Stuart) was assigned as staff representative for Schevers during his disciplinary proceedings. Schevers stated that he spoke with Stuart on December 15, 1994 but never saw him after that. At Schevers' disciplinary hearing on December 19, 1994 Disciplinary Hearing Officer Bromley (Bromley) informed Schevers that it was Stuart's day off. In his affidavit, Bromley stated that he asked Schevers if the presence of a staff representative was necessary, and Schevers said it was not. Schevers disputes this version of events, and maintains that he was not given the opportunity to obtain another staff representative or wait until Stuart was available. Bromley's affidavit also indicates that for safety reasons, the methamphetamine was not brought to the hearing, although affidavits in the record indicate that Schevers was shown a copy of the evidence envelope, which listed the chain of custody. Bromley also found that the chain of custody was intact. Finally, the record also reflects that Lieutenant Sanders could have appeared to testify to the chain of custody, but that Schevers indicated that was not necessary.

Based on Redifer's report, Bromley found Schevers guilty of Individual Disruptive Behavior. That report listed a drug dog alert to Schevers' area, the finding of the bag, and the positive drug test on contents of the bag as evidence of Schevers' guilt. Bromley sentenced Schevers to 55 days in restrictive custody (or disciplinary segregation confinement), with five days credit for time served.

Schevers served that sentence, and also filed an Application for Writ of Habeas Corpus in Ada County. The magistrate court granted the State's motion to dismiss, ruling that under *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), "neither the prison regulations nor the Due Process Clause itself affords the petitioner a protected liberty interest that would entitle petitioner to the procedural protection set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), at a disciplinary hearing where the sentence was segregated confinement."

Schevers appealed to the district court. After a hearing, the district court affirmed the magistrate court, holding that under *Sandin*, there is no right to due process in a prison disciplinary setting unless the punishment is atypical. Specifically, the court ruled that the holding of the *Sandin* decision was "that there is no constitutional right under the Federal Fourteenth Amendment to due process in prison created through state regulations unless the punishment is atypical." Further, the court held that *Sandin* effectively overruled the earlier Idaho case of *Bourgeois v. Murphy*, 119 Idaho 611, 809 P.2d 472 (1991), and that the procedural requirements of *Cootz v. State*, 117 Idaho 38, 785 P.2d 163 (1989), had been met.

Schevers appeals.

## II.

### ISSUES ON APPEAL

1. Does *Sandin v. Conner* eliminate an inmate's due process protections during disciplinary hearings under the Fourteenth Amendment of the United States Constitution?

2. Does the *Sandin* decision eliminate an inmate's due process protections under art. I, Section 13 of the Idaho Constitution?

3. Is the State entitled to its attorney fees on appeal on the basis that the appeal is frivolous?

## III.

### ANALYSIS

When reviewing a district court's decision, made while the district court was acting in its appellate capacity, this Court examines the magistrate's record independently. However, we give due regard to the district court's decision on the matter. *Application of Henry*, 127 Idaho 349, 350, 900 P.2d 1360, 1361 (1995). This Court will uphold the magistrate's findings if they are supported by substantial and competent evidence. This case involves a constitutional question, over which we exercise free review. *Id.*

The magistrate court dismissed Schevers' petition for failure to state a claim upon which relief can be granted. When a petition for habeas corpus has been dismissed, the appellate court reviews the dismissal for abuse of discretion. *Johnson v. State*, 85 Idaho 123, 127, 376 P.2d 704, 706 (1962). *See also Brandt v. State*, 126 Idaho 101, 103, 878 P.2d 800, 802 (Ct.App.1994), *cert. denied*, 513 U.S. 1005, 115 S.Ct. 523, 130 L.Ed.2d 427 (1994).

**A. In Light Of *Sandin v. Conner*, An Inmate Does Not Have A Protected Liberty Interest Under The Fourteenth Amendment In Remaining Free From Disciplinary Segregation, And Therefore Is Not Entitled To Fourteenth Amendment Due Process Protections.**

To determine whether an individual's due process rights under the Fourteenth Amendment have been violated, a court must engage in a two-step analysis. It must first decide whether the individual's threatened interest is a liberty or property interest under the Fourteenth Amendment. *Smith v. Meridian Joint Sch. Dist. No. 2.*, 128 Idaho 714, 722, 918 P.2d 583, 591 (1996) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972)). Only if it finds a liberty or property interest will the court reach the next step, in which it determines the extent of due process procedural protections. *Id.*

Schevers argues that he had a protected liberty interest in remaining free from prison disciplinary segregation. The United States Supreme Court recently addressed this very issue. In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), Conner, a maximum security inmate in the Hawaii prison system, was charged with and convicted of high misconduct in prison, and prison officials sentenced him to 30 days disciplinary segregation. Conner filed suit under 42 U.S.C. Section 1983, based in part on alleged deprivations of due process during his disciplinary hearing. The district court granted summary judgment in favor of the prison officials. The Ninth Circuit Court of Appeals reversed, holding that Conner had a liberty interest in remaining free from disciplinary segregation, and was therefore entitled to Fourteenth Amendment procedural due process protections. 515 U.S. at ——, 115 S.Ct. at 2296.

The United States Supreme Court reversed. It began its discussion with a history of cases regarding liberty interests in a prison setting. *Id.* at ——––——, 115 S.Ct. at 2297–99 (discussing *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). The Court noted that over the years, the prison liberty interest inquiry evolved into a focus on alleged entitlements created by prison regulations, rather than on the nature of the punishment at stake. This in turn "encouraged prisoners to

**576**

comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." 515 U.S. at ——, 115 S.Ct. at 2299. Further, two "undesirable effects" became apparent: there were disincentives to states to codify prison management, and courts became involved in the day-to-day management of prisons. *Id.* at ——, 115 S.Ct. at 2299.

To remedy this problem, the Supreme Court set forth a new standard for determining when a prisoner has a protected liberty interest:

> we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless *imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*

515 U.S. at ——, 115 S.Ct. at 2300 (citations omitted) (emphasis added). The Supreme Court then held that Conner did not have a protected liberty interest in remaining free from disciplinary segregation, because that punishment was not an atypical and significant hardship. *Id.* at —— – ——, 115 S.Ct. at 2300–01. It did not "present a dramatic departure from the basic conditions of Conner's indeterminate sentence", and "with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody." *Id.* at ——, 115 S.Ct. at 2301.

In further explaining its decision, the Court contrasted prison discipline with school discipline and pretrial detainee discipline, and stated that:

> [t]he punishment of incarcerated prisoners, ... does not impose retribution in lieu of a valid conviction, nor does it maintain physical control over free citizens forced by law to subject themselves to state control over the educational mission. It effectuates prison management and prisoner rehabilitative goals. Admittedly, prisoners do not shed all constitutional rights at the prison

gate, but " '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' "

*Id.* at ——, 115 S.Ct. at 2301 (citations omitted).

Since *Sandin* was decided, the Circuit Courts of Appeals have handed down several decisions applying its holding. The Ninth Circuit indicated that factors to be used in determining whether the punishment is an atypical and significant hardship are the likelihood that it will affect the prisoner's sentence, and the duration of the segregation. *Keenan v. Hall,* 83 F.3d 1083, 1089 (9th Cir.1996). Other decisions have given examples of protected liberty interests in a prison setting. *See Luken v. Scott,* 71 F.3d 192, 193 (5th Cir.1995) (stating that "*Sandin* establishes that [ ] administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest"); *Williams v. Ramos,* 71 F.3d 1246, 1248 (7th Cir.1995) (holding that "[a] prisoner has no liberty interest in remaining in the general prison population"); *Mujahid v. Meyer,* 59 F.3d 931, 932 (9th Cir.1995) (holding that being placed in disciplinary segregation for fourteen days was not an atypical, significant hardship); *Orellana v. Kyle,* 65 F.3d 29, 31–32 (5th Cir.1995) (noting that the *Sandin* Court felt that disciplinary segregation was not an atypical and significant hardship, even though (in the words of the Fifth Circuit) "[f]ew other incidents of prison life involve such a level of deprivation as disciplinary segregation."). *But see Williams v. Fountain,* 77 F.3d 372, 374, n. 3 (11th Cir. 1996) (finding that one year in disciplinary segregation was an atypical and significant hardship).

Schevers argues that in his case, disciplinary segregation was an atypical and significant hardship, detailing the burdens of his punishment. He also attempts to distinguish his situation from that in *Sandin* by arguing that since he was in minimum security, instead of the maximum security in which Conner was being held, his move to disciplinary segregation was an atypical and significant hardship. We note the rationale of the Sev-

enth Circuit when it considered the case of a prisoner who had also listed the hardships of segregation. There, the court stated that "[w]e do not believe, however, that his catalogue of harms greatly exceeds what one could expect from prison life generally, as '[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a retraction justified by the considerations underlying our penal system.'" *Williams v. Ramos,* 71 F.3d at 1249 (quoting *Wolff v. McDonnell,* 418 U.S. at 555, 94 S.Ct. at 2974 (1974)).

Given that he was originally in minimum security, Schevers' move to disciplinary segregation and subsequent reclassification to medium security certainly presented a change, particularly since he no longer received some minimum security privileges, including work privileges, television, radio, tobacco, coffee, hobbycraft, and access to his personal property. However, deprivation of those items does not represent a serious departure from what one would normally expect from prison life. While Schevers no doubt suffered some hardship when he was transferred to disciplinary segregation, that hardship cannot be characterized as "significant" and "atypical", particularly since his disciplinary sentence was 55 days, not much more than the time period in *Sandin,* and significantly less than the one year time period condemned by the Eleventh Circuit in *Williams v. Fountain.* To hold that the loss of those privileges gave rise to a protected liberty interest would be to ignore the Supreme Court's analytical shift from focus on regulations to a focus on hardship. In addition, we are mindful, as was the United States Supreme Court, that the goals of incarceration and successful prison management necessitate the retraction of those privileges and rights enjoyed by citizens who are not incarcerated.

Schevers also alleges that he lost his parole date because the disciplinary violation was on his prison record, and that he had a liberty interest in his parole date. However, there is nothing in the record on appeal to substantiate that claim, other than Schevers' bare allegation. As the *Sandin* Court noted, the decision whether to release a prisoner on parole "rests on a myriad of considerations." 515 U.S. at ——, 115 S.Ct. at 2302. Further, as the Fifth Circuit stated, "[a]ny host of administrative or disciplinary decisions made by prison authorities might somehow affect the timing of a prisoner's release, but such effects have never been held to confer a constitutionally protected liberty interest upon a prisoner." *Luken,* 71 F.3d at 193. Schevers has not shown a constitutionally protected liberty interest in his parole date.

■ We affirm the decision of the magistrate court that under *Sandin,* Schevers does not have a liberty interest in remaining free from disciplinary segregation. Since Schevers did not have a protected liberty interest in remaining free from disciplinary segregation, he was not entitled to procedural due process protections under the Fourteenth Amendment, and we affirm the decision of the magistrate court in this regard.

**B. The "Atypical And Significant Hardship" Test Is The Proper One To Be Used In Determining If There Is A Liberty Interest Protected By The Due Process Clause In Art. I, Section 13 Of The Idaho Constitution.**

■ Like the Federal Constitution, the Idaho Constitution includes a due process clause, which states that "[n]o person shall ... be deprived of life, liberty or property without due process of law." Idaho Const. art. I, Section 13. We have previously recognized that while that clause is "substantially the same" as its federal counterpart, "the scope is not necessarily the same." *Cootz v. State,* 117 Idaho 38, 40, 785 P.2d 163, 165 (1989). We interpret the Idaho Constitution's due process clause independently, and are not necessarily bound by the federal interpretation of due process. *Id.* However, we will consider the rationale used by the United States Supreme Court in deciding Fourteenth Amendment due process cases. *Id.* at 41, 785 P.2d at 166. In *Cootz,* we concluded that the Idaho constitutional standard for the quantum of evidence required to convict a prisoner in a disciplinary hearing is the same as that under the United States

Constitution. *Id.* at 40, 785 P.2d at 165. Even more significantly, this Court recently stated that "[i]n due process cases involving the deprivation of a liberty interest, this Court has applied the United States Supreme Court's standard for interpreting the due process clause of the United States Constitution to art. I, Section 13 of the Idaho Constitution." *Smith v. Idaho Dep't of Correction,* 128 Idaho 768, 771, 918 P.2d 1213, 1216 (1996).

With those principles in mind, we hold that the "atypical and significant hardship" standard used for Fourteenth Amendment Due Process Clause also applies to the Due Process Clause contained in Art. I, Section 13 of the Idaho Constitution. Therefore, for the reasons stated in the preceding sections of this opinion, we hold that Schevers did not have a liberty interest under the Idaho Constitution's Due Process Clause.

### C.  The State Is Not Entitled To Attorney Fees On Appeal.

The State requests attorney fees under Idaho Code section 12–122, which permits attorney fees to be awarded to the respondent in a habeas corpus action if the court finds that the action was brought frivolously. That section also declares "that the court, in its discretion, may determine that the action was not brought frivolously when the action involves a material issue of law that has not been settled by statute or by supreme court decision in this state." I.C. Section 12–122.

Given that the United States Supreme Court recently changed its method of analysis regarding prison discipline, this case marks the first time that the Idaho Supreme Court has considered the issue in light of *Sandin v. Conner.* Therefore, it cannot be said that Schevers brought this action and appeal frivolously, and accordingly we deny attorney fees to the State.

### IV.

### CONCLUSION

We affirm the magistrate court's decision that under *Sandin,* a prisoner does not have a constitutionally protected liberty interest in remaining free from disciplinary segregation. We further hold that the atypical and significant hardship test articulated in *Sandin* is the proper test to be applied in determining whether a prisoner has a liberty interest protected by Art. I, Section 13 of the Idaho Constitution. Finally, we hold that the State is not entitled to its attorney fees on appeal.

McDEVITT, C.J., and JOHNSON, TROUT and SCHROEDER, JJ., concur.