191 P.3d 250

**Todd Robert BRIGGS, Petitioner–
Appellant on Appeal,**

and

**Dean A. Harrell, Petitioner,**

v.

**Warden Kevin KEMPF, ICI–O, Captain
Kenshriver, et al, Respondents–
Respondents on Appeal.**

No. 34394.

Court of Appeals of Idaho.

July 31, 2008.

Todd Robert Briggs, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Krista L. Howard, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Chief Judge.

Todd Robert Briggs appeals from the district court's order on intermediate appeal

affirming the magistrate's grant of summary judgment and dismissing his prisoner civil rights complaint. We affirm.

## I.

## BACKGROUND

Briggs was incarcerated at the Idaho Correctional Institution, Orofino (ICI–O), at all times relevant to this case. In May of 2004, Briggs attempted to escape from ICI–O, but was caught prior to clearing the first fence.[1] He received a disciplinary offense report, and was segregated in the restrictive housing unit pending an investigation of the incident. After a disciplinary offense hearing, Briggs was found guilty of escape, and was sentenced to 30 days of disciplinary detention, with credit for time served. A release from detention was set for June 13, 2004. While awaiting his disciplinary hearing and during the remaining days in detention, Briggs was afforded personal property which included basic hygiene items. He was provided with food, clothing, medical care, exercise time, and access to the paralegal. The other property he possessed prior to the escape attempt was inventoried and placed into prison storage. On June 10, 2004, Briggs attended a restrictive housing hearing, at which time the restrictive housing committee recommended that he be placed in administrative segregation following release from detention due to the ongoing escape risk. Warden Kempf approved this placement.

From June 14 until August 10, a total of 58 days, Briggs remained in the same cell which he had occupied during disciplinary detention, and his personal property was not returned to him from storage. Briggs filed multiple offender concern forms and grievance forms expressing his desire to have his personal property returned to him. Based on ICI–O directives, prisoners in administrative segregation status are allowed to possess personal property that disciplinary detention inmates are not allowed to have. Further-more, prisoners in administrative segregation are allowed certain privileges that inmates in disciplinary detention are not afforded. Despite his change in status, Briggs was not granted the additional privileges, and his personal property was not returned to him. Various officers in charge of the restrictive housing unit as well as Warden Kempf responded to these concern and grievance forms, informing Briggs that the problem was being looked into, that he would be transferred as soon as possible, and that his property would be returned to him soon. Briggs was informed multiple times that his status had changed to administrative segregation, but because ICI–O does not have administrative segregation facilities, he was treated as "in transit" or "awaiting transport."[2] Briggs was not immediately transferred to another facility due to pending felony charges in Clearwater County from the attempted escape. After being sentenced on these charges, Briggs was transferred to the Idaho State Correctional Institution in Boise and eventually to the Idaho Maximum Security Institution. He was then released from administrative segregation status and returned to the general population, where his personal property was returned to him.

Briggs filed a prisoner civil rights complaint for damages, alleging a violation of his due process rights by Warden Kempf and all correctional officers by depriving him of his property and the privileges ordinarily afforded to inmates in administrative segregation status. Both sides moved for summary judgment, which the magistrate granted in favor of the warden and officers. Briggs appealed to the district court, which affirmed the magistrate. Briggs appeals to this Court.

## II.

## DISCUSSION

■ Briggs appeals from the district court's affirmance of the magistrate's grant

---

1. Briggs was joined in the escape attempt by Dean A. Harrell, who also joined in the initial prisoner civil rights suit and the appeal to the district court. However, only Briggs appealed to this Court.

2. Briggs received periodic reports updating him on the status of his confinement. Each of these reports listed his status as administrative segregation. Although there was a space available to indicate his status as "in transit" or "awaiting transport," this option was not marked.

of summary judgment to Warden Kempf and the correctional officers employed at ICI–O. Admitting that the facts are undisputed, he contends that summary judgment should have been granted in his favor. We first note that summary judgment under I.R.C.P. 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, where the parties concede that there are no controverted facts, we exercise free review in determining whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.,* 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct.App.1986).

■ Briggs contends that personnel at ICI–O unconstitutionally deprived him of his right to property and liberty without due process of law. The Due Process Clauses of the United States and Idaho Constitutions forbid the government to deprive an individual of life, liberty, or property without due process of law. U.S. Const. amend. XIV; Idaho Const. art. I, § 13. These constitutional protections extend to prisoners, subject to the qualification that incarceration does necessitate the withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. *Martin v. Spalding,* 133 Idaho 469, 472, 988 P.2d 695, 698 (Ct.App.1998). "The fact of confinement as well as the legitimate goals and policies of the penal institution limit these retained constitutional rights." *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447, 473 (1979).

■ To determine whether an individual's due process rights under the Fourteenth Amendment have been violated, a court must engage in a two-step analysis. *Schevers v. State,* 129 Idaho 573, 575, 930 P.2d 603, 605 (1996). It must first decide whether the individual's threatened interest is a liberty or property interest under the Fourteenth Amendment. *Id.; Smith v. Meridian Joint Sch. Dist. No. 2,* 128 Idaho 714, 722, 918 P.2d 583, 591 (1996). Only if it finds a liberty or property interest will the court reach the next step, in which it determines the extent of due process procedural protections. *Schevers,* 129 Idaho at 575, 930 P.2d at 605.

Briggs does not contest the process afforded him prior to his placement in disciplinary detention, or the process afforded him prior to his transfer to administrative segregation status. He contests the 58 days following his release to administrative segregation status during which he was held in the same disciplinary detention cell, and denied the personal property and privileges associated with administrative segregation. In essence, Briggs claims that he was detained in disciplinary detention for 58 days despite his classification as an administrative segregation inmate. The state concedes that Briggs was held in the same cell from May 14 until August 10, 2004, that the personal property which inmates in administrative segregation are typically allowed to possess was denied him after his transfer to that status, that he was denied privileges ordinarily afforded to inmates in that status, and that ICI–O does not typically house administrative segregation inmates. Thus the issue before the Court is purely a matter of law.

## A.   Liberty Interest

■ Briggs asserts a liberty interest in not being confined to disciplinary detention when in fact he was classified as administrative segregation. To determine whether an inmate has a protected liberty interest, the Idaho Supreme Court adopted the reasoning of the United States Supreme Court from *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). *Schevers,* 129 Idaho at 575–77, 930 P.2d at 605–07. Shifting from a focus on regulations to a focus on hardship, the court looks to whether the restriction imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." In other words, the court looks at whether the restrictions constitute a dramatic departure from the basic conditions of prison life. *Sandin,* 515 U.S. at 484–85, 115 S.Ct. at 2300–01, 132 L.Ed.2d at 429–30. In *Schevers,* 129 Idaho at 576, 930 P.2d at 606, the Court identified two factors to consider in determining whether the punishment is atypical and a significant hardship: the likelihood that it will affect the prisoner's sentence, and the duration of the segregation. In that case, Schevers

was moved from a minimum security general population placement, to disciplinary segregation. He was thereafter reclassified as medium security. This sentence of disciplinary segregation resulted in the denial of certain minimum security privileges and the loss of access to personal property. Although he was placed in disciplinary segregation for 55 days, the Court concluded that this hardship was not a serious departure from what one would normally expect from prison life. *Id.* at 577, 930 P.2d at 607. The Court's declaration that Schevers lacked a protected liberty interest led to the conclusion that he was not entitled to procedural due process under either the Fourteenth Amendment to the United States Constitution, or Article 1, section 13 of the Idaho Constitution. *Schevers* at 577–78, 930 P.2d at 607–08.

While in administrative segregation, Briggs had basic hygiene items including soap, shampoo, a toothbrush, toothpaste, deodorant, and a hair brush. He was provided a segregation jumpsuit, socks, underwear, T-shirts, and shower shoes. Briggs also had an ink pen and a Bible with him. He was provided food and given access to medical care, exercise, and the paralegal. During this time he was denied personal property items such as athletic shoes, gym shorts, radio, and television and was not allowed to purchase items from the commissary, wear regular prison-issue clothing, visit the barber, or access laundry privileges. Briggs bases his due process violation claim on prison directives distinguishing inmates in administrative segregation from those in disciplinary detention. According to Directives 319 and 320, the administrative review committee is to review placement of an offender in administrative segregation once a week for the first 60 days of an inmate's new status. If an authorized activity or service is not given to an inmate, such deprivation is to be documented. Although access to privileges and property is contingent on the security and safety needs of the unit, inmates in administrative segregation are generally afforded general prison-issue clothing, the same opportunities for hygiene, bedding, laundry, barbering and hair care, and writing and receiving letters as inmates in the general population. Administrative segregation inmates are allowed to make one phone call per month and to have one visitor per month. The inmates are also allowed to purchase up to $30 of commissary items per week.

■ The state concedes that Briggs was denied these reviews, documentation, and privileges. However, the denial of a privilege that an inmate expects based on prison directives does not necessarily result in a due process violation. As the United States Supreme Court instructed in *Sandin*, the focus is on hardship, and not the existence of regulations designed for successful prison management. Briggs spent 58 days in his disciplinary detention cell after he was released from detention. Despite his change of status on paper, he was not afforded the privileges associated with administrative segregation. The lack of privileges did not in any way extend his sentence. *See Keenan v. Hall*, 83 F.3d 1083 (9th Cir.1996), *as amended* 135 F.3d 1318 (9th Cir.1998). Furthermore, he was in this quasi-detention status for a total of 58 days. This is only 3 days longer than the time period at issue in *Schevers*. Briggs was undeniably frustrated and disappointed by his lack of privileges, but he has not shown that the denial was an atypical or significant hardship when compared to normal prison life. A "state does not violate an individual's federal constitutional right to procedural due process merely by deviating from its own established procedures." *Pryor–El v. Kelly*, 892 F.Supp. 261, 271 (D.D.C.1995). Briggs failed to demonstrate the violation of a protected liberty interest.

**B. Property Interest**

■ Briggs also contests the deprivation of his personal property during the 58 days in administrative segregation status. In order to establish a cause of action for a due process violation in connection with this property, an inmate must first demonstrate that a "deprivation" of his property occurred. *Martin*, 133 Idaho at 473, 988 P.2d at 699. There is a difference between an inmate's ownership rights in property and an inmate's right to possess the property while in prison. *Id.* In *Martin*, the inmate was ordered to spend 30 days in administrative segregation as punishment for a disciplinary offense.

During an inventory search of his former cell, officers discovered contraband property. Martin was given the choice of having the property shipped to an address of his choosing outside the prison, donating the property to charity, or having the property destroyed. His remaining property was inventoried and stored until his return to general population. Relying on similar cases in other jurisdictions, this Court found that Martin was never denied ownership rights in his property; he chose to donate the contraband property, voluntarily relinquishing ownership, and therefore no deprivation occurred. *Id.* at 470, 988 P.2d at 696. Furthermore, even if a deprivation had occurred, it did not rise to the level of an atypical and significant hardship as compared to normal prison life. *Id.* at 473, 988 P.2d at 699.

Although *Martin* addressed officers removing contraband property from an inmate's possession for the duration of a prison term, it is analogous to this situation. Briggs was denied possession of his personal property while classified as an administrative segregation inmate, although he was not denied ownership. Officials at ICI–O stored his personal property for him and it was transferred to Boise and returned to him when he changed facilities. While the denial of his property was not in accordance with prison directives, Briggs has not shown that it amounted to a deprivation. Even if a deprivation occurred, it was not an atypical and significant hardship in relation to the ordinary incidents of prison life. The denial of laundry privileges, athletic shoes, gym shorts, a radio, a television, and commissary items, while frustrating, are not beyond the restrictions one would normally expect in prison.

Briggs contends that his suffering should be considered as compared to other inmates classified as administrative segregation; however that is clearly not the standard adopted in Idaho. *See Schevers,* 129 Idaho at 576–77, 930 P.2d at 606–07.[3] The goals of incarceration and successful prison management necessitate the retraction of some privileges and rights enjoyed by citizens who are not incarcerated. *Id.* at 577, 930 P.2d at 607. Briggs was provided with basic hygiene and clothing items; the loss of special shoes, clothing, and entertainment was not an atypical and significant hardship.

### III.

### CONCLUSION

Briggs failed to show the violation of a protected liberty or property interest; his due process rights were not infringed by the denial of property and privileges typically afforded administrative segregation inmates during the 58 days prior to his transfer to another facility. The magistrate did not err by granting summary judgment in favor of Warden Kempf and the officers of ICI–O. The district court's order affirming the magistrate's grant of summary judgment and dismissal of Briggs' prisoner civil rights complaint is affirmed.

Judge LANSING and Judge PERRY concur.

---

**3.** Although the *Schevers* standard is used to identify a protected liberty interest, the guiding principles set forth should also be considered when addressing the deprivation of property. *Martin v. Spalding,* 133 Idaho 469, 473, 988 P.2d 695, 699 (Ct.App.1998).