IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39048

| | | |
|---|---|---|
| LERAJJAREANRA-O-KEL-LY, | ) | 2013 Unpublished Opinion No. 311 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: January 7, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| KIMBERLY JONES, EDWARD ALDRIN, | ) | THIS IS AN UNPUBLISHED |
| FRANK WELCH, HOPE STERLING, and | ) | OPINION AND SHALL NOT |
| SHIRLEY ROANE, | ) | BE CITED AS AUTHORITY |
| | ) | |
| Defendants-Respondents. | | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge.

Judgment summarily dismissing civil rights complaint, affirmed.

Lerajjareanra-O-Kel-Ly, Idaho Falls, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; William M. Loomis, Deputy Attorney General, Boise, for respondents.

_____

GUTIERREZ, Chief Judge

Lerajjareanra-O-Kel-Ly appeals from the district court's judgment summarily dismissing his civil rights complaint. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

In April 2008, in Clearwater County, Lerajjareanra-O-Kel-Ly filed an extremely lengthy civil rights complaint against numerous correctional officials (Defendants), alleging various violations due to disciplinary and classification actions taken against him during his incarceration. The situations at issue stemmed largely from Lerajjareanra-O-Kel-Ly's repeated sexual contact with other inmates and mistreatment of prison staff. Lerajjareanra-O-Kel-Ly was ordered to file a condensed ten-page complaint, which he did. Venue was transferred to Ada County where Lerajjareanra-O-Kel-Ly filed a lengthy amended complaint. He was again ordered to file a shortened version. He complied. In January 2010, Defendants filed a motion to

1

dismiss most of the claims and parties pursuant to Idaho Rule of Civil Procedure 12(b)(6). The district court granted the majority of the Defendants' motion. As to the remaining causes of action and defendants, the Court held:

> [T]he plaintiff has alleged sufficient facts to proceed against [certain] defendants . . . for violation of his constitutional rights at his administrative hearing. Likewise, the plaintiff may be able to prove constitutional deprivation during his various DOR hearings against [certain] Defendants . . . . There are also sufficient facts alleged to support a cause of action for use of excessive force against [certain] defendants . . . .

The parties filed cross motions for summary judgment, which the district court granted in favor of the Defendants. Lerajjareanra-O-Kel-Ly now appeals the district court's judgment summarily dismissing his civil rights complaint.

## II.

## ANALYSIS

Although it is clear from Lerajjareanra-O-Kel-Ly's appellate brief that he challenges the district court's memorandum decision granting the Defendants' motion for summary judgment, his actual arguments as to *how* the district court abused its discretion in granting the Defendants' motion are difficult to discern. He does, however, mention facts and authority relating to two of the three claims the district court addressed in its memorandum decision: that his procedural due process rights were violated over the course of various disciplinary proceedings, and that his procedural due process rights were violated when he was placed in long-term administrative segregation. We will address each in turn.[1]

We first note that summary judgment under Idaho Rule of Civil Procedure 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514,

---

[1] To the extent Lerajjareanra-O-Kel-Ly raises any issues on appeal for the first time, we do not consider them. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991).

517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint Sch. Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994).

The party moving for summary judgment initially carries the burden to establish there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Eliopulos v. Knox*, 123 Idaho 400, 404, 848 P.2d 984, 988 (Ct. App. 1992). The burden may be met by establishing the absence of evidence on an element the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct. App. 1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini-Mart, Inc.*, 134 Idaho 711, 712, 8 P.3d 1254, 1255 (Ct. App. 2000). Once such an absence of evidence is established, the burden shifts to the party opposing the motion to show, via further depositions, discovery responses or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under Idaho Rule of Civil Procedure 56(f). *Sanders*, 125 Idaho at 874, 876 P.2d at 156.

The United States Supreme Court, in interpreting Federal Rule of Civil Procedure 56(c), which is identical in all relevant aspects to Idaho Rule of Civil Procedure 56(c), has stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof . . . .

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citations omitted). The language and reasoning of *Celotex* have been adopted in Idaho. *Dunnick*, 126 Idaho at 312, 882 P.2d at 479.

In granting the Defendants' motion for summary judgment, the district court noted the facts relied upon were gleaned from the affidavits of the parties and, although the parties agreed as to many of the facts, to the extent there was disagreement, the court viewed the facts in the light most favorable to the party opposing the motion. It then addressed the remaining claims.

## A.      Disciplinary Hearings

According to the district court, Lerajjareanra-O-Kel-Ly asserted his procedural due process rights were violated over the course of four separate disciplinary hearings[2] and summarized the claimed violations thusly:

> a) that Plaintiff was not provided with legal representation in the hearings;
> b) that there was ex parte contact at one hearing; *i.e.*, the hearing officer discussed the facts of the case with a witness outside Plaintiff's presence;
> c) that the hearing officer was biased and refused to recuse herself; and
> d) that witness statements were not produced for Plaintiff's use at the hearing such that Plaintiff was not allowed to present his case.

To determine whether an individual's due process rights under the Fourteenth Amendment have been violated, a court must engage in a two-step analysis. *Schevers v. State*, 129 Idaho 573, 575, 930 P.2d 603, 605 (1996); *Briggs v. Kempf*, 146 Idaho 172, 175, 191 P.3d 250, 253 (Ct. App. 2008). It must first decide whether the individual's threatened interest is a liberty or property interest under the Fourteenth Amendment. *Schevers*, 129 Idaho at 575, 930 P.2d at 605; *Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 722, 918 P.2d 583, 591 (1996); *Briggs*, 146 Idaho at 175, 191 P.3d at 253. Only if it finds a liberty or property interest will the court reach the next step, in which it determines the extent of due process procedural protections. *Schevers*, 129 Idaho at 575, 930 P.2d at 605; *Briggs*, 146 Idaho at 175, 191 P.3d at 253. Put another way, if a court concludes an individual lacked a protected liberty interest, this leads to the conclusion the individual was not entitled to procedural due process under either the Fourteenth Amendment to the United States Constitution, or Article 1, Section 13 of the Idaho Constitution. *See Schevers*, 129 Idaho at 577-78, 930 P.2d at 607-08; *Briggs*, 146 Idaho at 176, 191 P.3d at 254.

Thus, we must examine whether a protected liberty interest was implicated by these disciplinary hearings. Specifically, we examine the punishment Lerajjareanra-O-Kel-Ly received as a result of the hearings, which, the district court found, ranged from five to thirty

---

[2]      The district court identified these disciplinary hearings as numbers 060060, 060113, 060139, and 060168.

days in disciplinary segregation.[3] To determine whether an inmate has a protected liberty interest, the Idaho Supreme Court adopted the reasoning of the United States Supreme Court from *Sandin v. Conner*, 515 U.S. 472 (1995). *Schevers*, 129 Idaho at 575-77, 930 P.2d at 605-07. Shifting from a focus on regulations to a focus on hardship, the court looks to whether the restriction imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84. In other words, the court looks at whether the restrictions constitute a dramatic departure from the basic conditions of prison life. *Id*. at 485-86.

In *Schevers*, 129 Idaho at 576, 930 P.2d at 606, the Court identified two factors to consider in determining whether the punishment is atypical and a significant hardship: the likelihood it will affect the prisoner's sentence, and the duration of the segregation. In that case, Schevers was moved from a minimum security general population placement to disciplinary segregation. He was thereafter reclassified as medium security. His placement in disciplinary segregation resulted in the denial of certain minimum security privileges and the loss of access to personal property. Although he was placed in disciplinary segregation for fifty-five days, the Court concluded this hardship was not a serious departure from what one would normally expect from prison life. *Id*. at 577, 930 P.2d at 607. The Court's declaration that Schevers lacked a protected liberty interest led to the conclusion he was not entitled to procedural due process under either the Fourteenth Amendment to the United States Constitution, or Article 1, Section 13 of the Idaho Constitution. *Schevers*, 129 Idaho at 577-78, 930 P.2d at 607-08. *See also Sandin*, 515 U.S. at 486 (holding that thirty days of disciplinary segregation was not an atypical or significant hardship).

Upon examination of the foregoing authority, the district court in this case concluded none of the four disciplinary hearings Lerajjareanra-O-Kel-Ly complains about resulted in "atypical or significant hardship," as all four disciplinary segregation periods were well within the boundaries of *Sandin* and *Schevers*.[4] Then, having determined Lerajjareanra-O-Kel-Ly did

---

[3] The Defendants point out that the practical result of the sanctions imposed following at least two of the hearings was that Lerajjareanra-O-Kel-Ly did not spend *any* additional time in disciplinary segregation after the disciplinary hearings were held.

[4] We also note there is no indication these punishments extended Lerajjareanra-O-Kel-Ly's sentence.

not have a protected liberty interest at stake, the court indicated it need not continue the procedural due process analysis, instead granting the Defendants' motion for summary judgment on those claims. The district court applied the correct standards of law and came to a soundly reasoned decision. Therefore, the district court did not err in granting the Defendants' motion for summary judgment as to this claim.[5]

## B. Administrative Segregation

The district court also granted the Defendants' motion for summary judgment as to Lerajjareanra-O-Kel-Ly's claim that his procedural due process rights were violated when he was placed in long-term administrative segregation, due largely to his sexual contact with fellow inmates and behavior towards prison staff. Even assuming, without deciding, that Lerajjareanra-O-Kel-Ly's long-term placement in administrative segregation implicates a liberty interest, *i.e.*, it amounts to an "atypical and significant hardship," Lerajjareanra-O-Kel-Ly has not shown the district court erred in granting the Defendants' motion for summary judgment. Idaho courts have not yet confronted the issue of what procedural due process applies when an inmate's placement in administrative segregation implicates a liberty interest. However, the United States Supreme Court addressed the issue in *Hewitt v. Helms*, 459 U.S. 460 (1983), *overruled in part on other grounds by Sandin*, 515 U.S. 472.[6] There, the Supreme Court considered whether prison inmates were entitled to due process before being placed in solitary confinement for administrative--rather than disciplinary--reasons. The Court expressly rejected

---

[5] To the extent Lerajjareanra-O-Kel-Ly argues he should not have been punished for sexual contact with other inmates because it was consensual, his argument does not have merit. During the period of confinement in prison, the right of intimate association, "'a fundamental element of personal liberty,'" is necessarily abridged. *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984)). In addition, prisons have a legitimate penological interest in preventing sexual contact between inmates. *See Veney v. Wyche*, 293 F.3d 726, 733-34 (4th Cir. 2002).

[6] Although it is clear *Hewitt* was overruled by *Sandin* in regard to the initial inquiry as to whether an inmate has a liberty interest at stake (with the focus now on the nature of the deprivation rather than the regulation at issue), *Sandin* did not speak to the process due where a protected liberty interest *is* found. In this regard, we agree with the Second Circuit, which held the procedural due process protections of *Hewitt* survived *Sandin* in cases where a liberty interest is found pursuant to *Sandin's* new strictures. *See Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999) ("[I]f *Sandin* had meant to overrule *Hewitt* to the extent of precluding a protected liberty interest for all administrative confinements, we would expect to see more pointed language to that effect.").

the idea that due process required a "detailed adversary proceeding" on the ground that it would not materially assist the decision to be made. *Id*. at 473-74. The Court further held that, in these situations, an "informal, nonadversary evidentiary review," at which the prisoner has the opportunity to state his views, satisfies the requirements of due process:

> An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective. So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied.

*Id*. at 476. The Court also noted that extended confinement in administrative segregation requires a periodic review of the prisoner's status to determine if the reasons for placement in segregation continue to exist. *Id*. at 477 n.9. *Accord Toussaint v. McCarthy*, 801 F.2d 1080, 1101 (9th Cir. 1986), *overruled in part on other grounds by Mennick v. Smith*, 459 F. App'x 649 (9th Cir. 2011) (holding that for placement in administrative segregation, due process requires a nonadversarial hearing be held within a reasonable time, the prisoner be informed of the charges or reasons segregation is being considered and the prisoner be allowed to present his views, but does *not* require written notice of charges, representation by counsel or counsel-substitute, the opportunity to present witnesses, or a written decision describing the reasons for placing a prisoner in administrative segregation).

The inmate in *Hewitt* received notice of the charges against him the day after his misconduct took place. Only five days after his transfer to administrative segregation, a hearing committee reviewed the existing evidence against him. Moreover, the inmate acknowledged on his misconduct form that he "had the opportunity to have [his] version reported as part of the record" and, thus, had an opportunity to present a statement to the committee. *Hewitt*, 459 U.S. at 477. The Supreme Court held this proceeding plainly satisfied the due process requirements for confinement of the inmate in administrative custody. *Id*.

Based on the above analysis, to address Lerajjareanra-O-Kel-Ly's claim, an inquiry into the circumstances surrounding his placement in administrative segregation is necessary. However, evidence regarding those circumstances is not properly contained in the record. The relevant facts appear only in the affidavit of Kevin Burnett, a paralegal at the Idaho Department

7

of Correction, and the exhibits attached thereto. Although apparently submitted to the district court in support of the Defendants' motion for summary judgment, the affidavit is not contained in the record on appeal. Rather, the Defendants attached the affidavit and its attached exhibits to their appellate brief, indicating that although the affidavit was listed in the register of actions, it was "inadvertently omitted from the Clerk's record." It is well settled that this Court is bound by the record and cannot consider matters or materials that are not part of the record or not contained in the record. *Chisholm v. Idaho Dep't of Water Res.*, 142 Idaho 159, 162-63, 125 P.3d 515, 518-19 (2005). In addition, it is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. *Powell v. Sellers*, 130 Idaho 122, 127, 937 P.2d 434, 439 (Ct. App. 1997). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *Id.* Thus, we will not presume the district court erred in granting the Defendants' motion for summary judgment where Lerajjareanra-O-Kel-Ly has not provided a sufficient record for us to assess the claim.

Even if we were to consider the affidavit and its attached exhibits and reach the merits of Lerajjareanra-O-Kel-Ly's claim, we would conclude the district court did not err in granting the Defendants' motion. Lerajjareanra-O-Kel-Ly was referred for placement in administrative segregation on May 10, 2006. The form indicated the reasons for the referral: "To protect you from other offenders"; "To protect other offenders from you"; and "To stabilize a volatile or difficult situation." The referral provided forty-eight hours' notice of the hearing. Lerajjareanra-O-Kel-Ly waived the forty-eight hour preparation time for the hearing and a "Restrictive Housing Placement" hearing was held on May 11 before the Housing Placement Committee (Committee). The Committee considered Lerajjareanra-O-Kel-Ly's disciplinary record, prison records from his past incarceration, attitude towards authority, willingness and ability to live with other offenders, classification (close custody at the time), and documented current and past behavior. In its summary of the evidence, the Committee also noted that Lerajjareanra-O-Kel-Ly had expressed "intimate feelings" for another inmate and had prior sexual predator "points," which created a possible security risk and a Prison Rape Elimination Act (PREA) threat. Lerajjareanra-O-Kel-Ly indicated to the Committee he would be in danger if moved to the Idaho Maximum Security Institution (IMSI) and contended the previous PREA designation was unfounded. The Committee unanimously recommended Lerajjareanra-O-Kel-Ly be placed in administrative segregation and forwarded their recommendation to

8

Warden Kimberly Jones, who authorized the placement on May 12. Over the next five years, Lerajjareanra-O-Kel-Ly continued to be housed at IMSI in administrative segregation. He had periodic reviews by the Committee, some of which recommended continued placement in administrative segregation that were approved by the warden, and others recommending release from administrative segregation that were rejected by the warden.

From these facts, we would conclude Lerajjareanra-O-Kel-Ly clearly received the process due him both prior to and during his prolonged placement in administrative segregation. As required by *Hewitt*, Lerajjareanra-O-Kel-Ly was given notice of the placement hearing and the reasons segregation was being considered and a committee considered evidence and Lerajjareanra-O-Kel-Ly's statement at a nonadversarial hearing held the day after he was given notice. In addition, although Lerajjareanra-O-Kel-Ly remained in administrative segregation for an extended period, periodic reviews of his status were held. There is, therefore, no question that, on its face, the procedure provided to Lerajjareanra-O-Kel-Ly was constitutionally adequate. The district court did not err in granting the Defendants' motion for summary judgment on this issue.

## III.
## CONCLUSION

Lerajjareanra-O-Kel-Ly did not have a protected liberty interest at stake in any of the four disciplinary hearings at issue because his punishments did not amount to "atypical or significant hardship" such that his procedural due process rights were implicated. Also, even assuming Lerajjareanra-O-Kel-Ly has a liberty interest in regard to his extended placement in administrative segregation, and that we may reach the issue given the deficient record on appeal, he was afforded constitutionally adequate procedural due process. Accordingly, the district court did not err in granting the Defendants' motion for summary judgment. The district court's judgment summarily dismissing Lerajjareanra-O-Kel-Ly's civil rights complaint is affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**

9